Filed 3/12/26  P. v. Holt CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B338324 c/w B341086 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA065756) |
| v. | |
| CALVIN DEWAYNE HOLT, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Kathleen Blanchard, Judge.  Affirmed.

Sarah S. Sanger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising

Deputy Attorney General, and Susan S. Kim, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted defendant of first degree residential robbery in 2016. He requested mental health diversion in 2023 (because his conviction was not yet final when the diversion statutes took effect) and, at a resentencing hearing in 2024, requested that the trial court strike a five-year sentencing enhancement. The trial court denied both requests. We consolidate the separate appeals from these two orders, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts[1]

#### A. *The underlying crime*

In April 2015, defendant and Lemont Everett Townsend went to the home of Calvin Ousley looking for defendant's girlfriend. When Ousley opened the security door to let the girlfriend leave, defendant and Townsend pushed their way into the residence. As the girlfriend fled, defendant punched Ousley in the face. While Townsend held Ousley at gunpoint and told him to "Sit [his] ass down," defendant disconnected the wires connecting Ousley's 60-inch flat-screen TV, took the time to locate the TV's remote, and walked out of the residence with the TV and remote. Defendant later sold the stolen TV and pocketed the cash.

Thereafter, defendant urged his girlfriend to lie to law

---

[1]     We draw these facts from our prior, unpublished appellate opinion affirming defendant's conviction. (*People v. Townsend et al.* (Jan. 12, 2018, B270929).)

enforcement by reporting that Ousley had raped her, so that defendant's actions could thus be somehow excused as a "crime of passion."  Defendant himself prevaricated, alternatively admitting and denying to law enforcement that he had urged his girlfriend to lie on his behalf.

### B. *Prosecution, conviction, appeal and resentencing on remand*

The People charged defendant with first degree residential robbery (Pen. Code, § 211)[2] and alleged that, in committing this crime, a principal had been armed with a handgun (§ 12022, subd. (a)(1)).  The People further alleged that defendant's 1983 and 1986 convictions for robbery constituted "strikes" within the meaning of our "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)) as well as prior serious felonies (§ 667, subd. (a)), and alleged that defendant had served five prior prison terms (§ 667.5, subd. (b)).

The matter proceeded to a bifurcated trial in February 2016.  The jury found defendant guilty of the robbery, found true the firearm enhancement, and in the bifurcated portion of the trial, found true the allegations regarding defendant's prior convictions.

In March 2016, the trial court sentenced defendant to prison for 35 years to life.  The sentence was comprised of a base sentence of 25 years to life for the robbery (as a "third strike" sentence under our State's Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j))), plus one year for the firearm

---

[2]     The People also charged defendant with two counts of false personation (§ 529, subd. (a)(3)), but later dismissed those counts.

All further statutory references are to the Penal Code unless otherwise indicated.

3

enhancement, plus five years for one of the prior serious felony enhancements (namely, the 1986 robbery conviction), plus four years for four of the prior prison term enhancements.[3]

On direct appeal, this court affirmed defendant's conviction. Defendant argued that the trial court had erred in not suspending the proceedings and ordering a psychiatric examination into his competence to stand trial because defendant had repeatedly disrupted the preliminary hearing proceedings to an extent he had to be removed from the courtroom and he thereafter refused to be transported to court for a pretrial hearing. This court rejected defendant's argument, finding that defendant's "course of conduct" and the trial court's observation of defendant in court "supported the trial court's view that [defendant] was malingering." This court nevertheless struck the one-year prior prison term enhancement based on defendant's 2013 conviction for possession of a controlled substance.

In June 2018, the trial court on remand resentenced defendant to a prison term of 34 years.

## II. Pertinent Post-conviction Proceedings

### A. *Mental health diversion*

On December 27, 2023, defendant filed a "Psychological Evaluation Pursuant to PC 1001.36 Performed by Dr. Joel Peel Leifer" in support of a request for mental health diversion pursuant to section 1001.36.

---

[3] The court did not impose a five-year prior serious felony enhancement for the 1983 robbery allegation (which was a juvenile adjudication) and did not impose a one-year prior prison term enhancement for the 1986 robbery (to avoid the double-counting prohibited by *People v. Jones* (1993) 5 Cal.4th 1142, 1153).

4

On May 22, 2024, the trial court conducted a hearing on whether defendant was eligible for mental health diversion under section 1001.36. The trial court denied defendant's request for mental health diversion, finding that he was neither eligible nor suitable for such diversion.

Defendant filed a timely appeal.

### B.  *Resentencing*

After the Department of Corrections and Rehabilitation (CDCR) notified the trial court that the recently enacted Senate Bill No. 483 (2021-2022 Reg. Sess.) entitled defendant to have his three prior prison term enhancements struck at a full resentencing hearing (§ 1172.75), defendant asked the trial court to exercise its recently conferred discretion in section 1385, subdivision (c) to strike his five-year prior serious felony enhancement. After a hearing on August 29, 2024, the trial court declined to exercise its discretion.

Defendant filed a timely appeal.

### C.  *Consolidation of appeals*

At the People's request and without objection from defendant, we consolidated the two appeals for argument and disposition.

## DISCUSSION

## I.  Mental Health Diversion

In 2018, our Legislature enacted section 1001.36, which authorizes pretrial mental health diversion for defendants suffering from qualifying mental health disorders. (See Stats. 2018, ch. 34, § 24; *Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 399-400 (*Lacour*).) Although defendant was convicted by the time of section 1001.36's enactment, his conviction was not yet final, so he is entitled to post-trial

5

consideration of his entitlement to mental health diversion. (*People v. Frahs* (2020) 9 Cal.5th 618, 632-633.)  Defendant argues that the trial court erred in denying him mental health diversion.

### A.  *Pertinent facts*

In support of his petition for mental health diversion, defendant submitted Dr. Leifer's evaluation, which was based on a Zoom interview Dr. Leifer conducted with defendant in October 2023; Dr. Leifer did not evaluate any of the transcripts or court filings in the record of conviction for this case.[4]  Dr. Leifer opined that defendant was eligible for mental health diversion under section 1001.36 because (1) defendant had a documented history of two mental illnesses (namely, (a) substance use disorder, due to his history of using PCP and cocaine, and (b) bipolar disorder), and (2) these mental illnesses "played a contributory role in" the 2015 robbery in light of defendant's self-reporting to Dr. Leifer that, at the time of the robbery, he was "under the influence of mind-altering substances" and not taking medications for his "chronic thought disorder," which meant that he was "experiencing paranoid/disordered thought processes and hallucinations" at the time of the robbery.  Dr. Leifer further opined that defendant was suitable for mental health diversion because he would not pose a danger if released into the community for treatment.

The People opposed defendant's request, but did not submit a competing expert opinion.

---

[4]     Defendant submitted this evaluation after this court, in December 2021, issued an order to show cause requiring the trial court to conduct a hearing on defendant's eligibility for mental health diversion.

The trial court held an eligibility hearing on May 22, 2024. The court ruled that defendant was not eligible for mental health diversion. Specifically, the court found that although defendant had been diagnosed with a qualifying mental disorder, no such disorder "play[ed] a significant role . . . in the commission of this offense." The court explained that defendant's conduct during the offense, including his "attempts to have the girlfriend falsely accuse [Ousley] of rape in order to specifically set up a heat of passion defense," showed that defendant was "engaged in some manipulative behavior" that was "very planned and calculated" and demonstrated "very clear thinking," which affirmatively refuted Dr. Leifer's opinion that defendant had a "disordered thought process" and suffered from hallucinations at that time. The court rejected Dr. Leifer's opinion because its factual basis rested solely on defendant's self-reporting rather than "objective facts or witness statements or statements of the defendant at the time" of the 2015 robbery. The court also ruled that defendant was not suitable for mental health diversion because he "pose[s] a[] reasonable risk of danger to public safety if treated in the community."

B.   *Analysis*

Under section 1001.36, a person charged with a felony or misdemeanor may obtain mental health diversion if he is found to be (1) eligible and (2) suitable for such diversion. (§ 1001.36, subds. (a)-(c).) A defendant is "eligible" for mental health diversion if (1) he has "been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders," and (2) "[t]he defendant's mental disorder was a significant factor in the commission of the charged offense." (*Id.*, subd. (b)(1) & (2).)

7

Section 1001.36 erects a presumption that a qualifying mental disorder was a significant factor "unless there is clear and convincing evidence that [the disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Id.*, subd. (b)(2).) In assessing whether this presumption of causation has been rebutted, a court may consider "any relevant and credible evidence." (*Ibid.*) We review a trial court's ruling on whether a defendant is eligible for mental health diversion for an abuse of discretion, and review any subsidiary factual findings for substantive evidence. (*Lacour*, *supra*, 110 Cal.App.5th at p. 401.) In evaluating whether substantial evidence supports the trial court's findings, we "must view the record in the light most favorable to the prevailing party below and give due deference to how the [trial court] may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996.) When evaluating whether substantial evidence supports a finding that must be made by clear and convincing evidence, we ask "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id.* at p. 1011.)

Substantial evidence supports the trial court's finding that defendant was not eligible for mental health diversion. Although defendant established that he suffered from a qualifying mental disorder (thereby satisfying the first requirement of eligibility and triggering the statutory presumption of causation), substantial evidence supports the trial court's finding that it is not highly probable that defendant's substance abuse and bipolar

8

disorders were a motivating factor, casual factor, or contributing factor to his involvement in the 2015 robbery. That is because the hallmarks of those disorders are, in Dr. Leifer's words, "paranoid/disordered thought processes and hallucinations," yet the record of conviction affirmatively shows that defendant exhibited "very clear thinking" during the robbery as he disconnected the TV, asked about and then secured the remote, and formulated a "crime of passion" defense. (Accord, *People v. Brown* (2024) 101 Cal.App.5th 113, 122-124 [clarity of defendant's thinking at the time of the crime relevant to the court's refusal to find a causal link between mental disorder and crime].) Because these objective facts affirmatively demonstrate clear thinking and thereby affirmatively refute the disorganized and hallucination-driven thinking that would be present if defendant's mental disorders had contributed to the charged offense, the trial court did not commit the sin of disregarding an expert opinion based solely on the "absence of evidence" showing that a defendant was laboring under a mental health disorder at the time of the offense. (See *Lacour, supra*, 110 Cal.App.5th at p. 404; *People v. Gomez* (2025) 113 Cal.App.5th 671, 688-689.)

Defendant resists this conclusion with what boils down to three arguments.

First, he argues that it is possible to suffer from mental disorders causing "disorganized and psychosis-driven" behavior *and* be really good at planning, but the portion of Dr. Leiter's report that he cites does not support that proposition. More to the point, it is not merely the advanced planning but the in-the-moment thinking that affirmatively refutes the causal link between defendant's mental disorders and the commission of the 2015 robbery. Defendant relatedly urges that his crime was not

9

particularly sophisticated, but the fact that his crime was not well-conceived does not negate the evidence that defendant's conduct during that crime evinced "very clear thinking" inconsistent with the mental illnesses from which he suffers. Given this contrary evidence, the court was within its power to reject as unfounded the contrary expert opinion that rested on defendant's self-serving statements about the crime that he made in 2023 rather than the evidence contemporaneous with the crime itself.

Second, defendant urges that the trial court wrongly conflated the jury's rejection of his "crime of passion" defense at trial with the absence of a causal link. This is not accurate, as the trial court cited defendant's *fabrication* of the "crime of passion" to show that he was capable of organized, clear and quick thinking during and immediately after the crime at issue.

Third, defendant notes that the People did not offer a contrary expert opinion. This is true. And had the trial court merely rejected Dr. Leifer's opinion on causation as unpersuasive, without more, we would be left with no expert opinion on causation; in that situation, the statutory presumption of causation would have been unrebutted (and a finding of causation compelled). But the trial court in this case accepted and relied upon Dr. Leifer's analytical framework for assessing whether defendant's mental illnesses contributed to the charged offenses—namely, that those illnesses caused defendant to "experienc[e] paranoid/disordered thought processes and hallucinations" at the time of those offenses—but went on to find that defendant's conduct at that time, as reflected in the record of conviction demonstrated clear and organized thinking. Thus, the court's finding in this case not only undermined the factual basis

10

for Dr. Leifer's opinion, but also affirmatively refuted the causal connection between defendant's mental illnesses and the charged offenses. The absence of a contrary expert opinion on these facts is accordingly not a basis for reversal.

In light of our conclusion that the trial court did not abuse its discretion in finding defendant ineligible for mental health diversion, we have no occasion to determine whether the court erred in finding him unsuitable for such diversion.

## II. Resentencing

In 2021, our Legislature enacted a statute—now codified at section 1172.75—declaring "legally invalid" most prior prison term enhancements and entitling defendants whose sentences have such enhancements to a "full resentencing." (§ 1172.75, subds. (a), (b) & (d)(1)-(2); *People v. Green* (2024) 104 Cal.App.5th 365, 373.) By the time of defendant's full resentencing in 2024, our Legislature had enacted section 1385, subdivision (c), which empowers trial courts to dismiss sentencing enhancements. Defendant argues that the trial court erred in refusing to dismiss the prior serious felony enhancement.

### A. *Pertinent facts*

During the August 29, 2024 resentencing, the trial court struck all three remaining prior prison term enhancements but declined defendant's request to strike the five-year prior serious felony enhancement arising from his 1986 robbery conviction. In so doing, the court acknowledged that it had "discretion" to strike the prior serious felony enhancement but elected not to exercise that discretion because "it would [not] be in the interest of justice" to strike that enhancement due to defendant's "conduct in this case," his "criminal history" prior to the 2015 conviction, and "his behavior since being incarcerated" in this case. Defendant's

11

pre-2015 criminal history includes convictions for robbery with a firearm, domestic violence with injury, evading a peace officer, resisting arrest, and multiple drug offenses. Defendant also committed 13 rule violations while in custody on the 2015 conviction.

###### B. *Analysis*

As in effect in 2024, section 1385 granted trial courts "the authority" and a simultaneous duty "to strike or dismiss [a sentencing] enhancement" (or, if they prefer, the "additional punishment for th[e] enhancement") if doing so is "in the furtherance of justice." (§ 1385, subds. (b) & (c)(1).) Although this provision makes clear that whether the dismissal of an enhancement is "in the furtherance of justice" is a "discretion[ary]" call for the trial court to make (*id.*, subd. (c)(1)-(3)), the provision also directs that the existence of any of nine numerated "mitigating circumstances" "weighs greatly in favor of dismissing the enhancement, unless the court finds that [the] dismissal of the enhancement would endanger public safety" (*id.*, subd. (c)(2)). In *People v. Walker* (2024) 16 Cal.5th 1024, our Supreme Court rejected the notion that the presence of an enumerated mitigating circumstance erects a rebuttable presumption in favor of dismissing an enhancement that can be rebutted only by a showing that dismissal would endanger public safety. (*Walker*, at pp. 1028-1029.) Instead, *Walker* held that, even when a court determines that dismissing an enhancement will not endanger public safety, the court retains discretion *not* to dismiss or strike that enhancement. In exercising that discretion, the court is to "assign[] significant value" to any mitigating circumstance(s), which "strongly favor[s]" and "will generally result in the dismissal of an enhancement"—except

12

when the "court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in [the] furtherance of justice.'" (*Id.* at pp. 1029, 1036.) We review the exercise of discretion under section 1385, subdivision (c) for an abuse of discretion. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.)

The trial court did not abuse its discretion in declining to strike the five-year prior serious felony enhancement. To be sure, it is undisputed that one of section 1385's "mitigating circumstances" is present here—namely, that the "enhancement is based on a prior conviction that is over five years old" (§ 1385, subd. (c)(2)(H)) because the robbery conviction supporting the enhancement at issue was sustained in 1986. Although this mitigating circumstance "weighs greatly in favor of dismiss[al]" of the enhancement, the trial court did not abuse its discretion in declining to dismiss the enhancement here because the court explicitly found that it would not be in the "interest of justice" to dismiss the enhancement given the nature of the current offense, defendant's extensive criminal history, and his demonstrated and persistent inability to conform his conduct to the rules while in custody. The trial court's citation to these reasons arguably constitutes an implicit finding that releasing defendant sooner would endanger public safety. But even if it does not, it was not an abuse of discretion for the trial court to conclude that dismissal of the enhancement was not warranted in the interest of justice given defendant's targeted use of violence to steal underlying this case, his varied and sometimes violent criminal history, and his continued rule-breaking while in custody *despite the fact that he could seek a lesser sentence.*

13

Defendant resists this conclusion with three arguments.

First, defendant argues that the trial court's ruling was procedurally deficient because the court did not explicitly state that it was giving "great weight" to the existence of an enumerated mitigating factor and did explicitly find that dismissing the enhancement would endanger public safety. We reject these arguments. To begin, they ignore the baseline presumption that courts have "considered all of the relevant factors" and correctly applied the law "in the absence of an affirmative record to the contrary." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) The record contains nothing that would rebut that baseline presumption. What is more, even if we do not consider the trial court's reasons for not dismissing the enhancement as constituting an implied finding that doing so would endanger public safety, the trial court retains the discretion to dismiss even in the absence of a finding that public safety is endangered.

Second, defendant argues that the trial court was required to dismiss the prior serious felony enhancement because it is more than five years old and hence constitutes a "mitigating factor." While true, that is just the first step of the analysis in section 1385; it is not the last. Because, as explained above, the court went on to find that dismissal of this enhancement was not in the interest of justice (which is called for as a subsequent step in the section 1385 analysis), the court did not abuse its discretion in not stopping at the first step.

Third and lastly, defendant argues that the trial court erred in citing his 13 prison disciplinary violations because they do not involve violence or criminal activity. The trial court never said they did. More to the point, regardless of their factual basis,

14

they constitute evidence of defendant's inability or unwillingness to conform his conduct to the rules—and this remains pertinent in deciding whether shortening his sentence and allowing him to be released into the community would be in the interest of justice.

**DISPOSITION**

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


I concur:


_____, J.

MOOR

The People v. Calvin Holt
B338324


BAKER, J., Concurring


The opinion for the court holds the trial court did not err in finding defendant and appellant Calvin Holt's (defendant's) mental illness did not contribute to his commission of the robbery in question—notwithstanding our Legislature's considered amendment of the diversion statute to require courts to presume contribution and find otherwise only on the basis of clear and convincing evidence.  (Pen. Code, § 1001.36, subd. (b)(2); Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1223 (2021–2022 Reg. Sess.), as amended June 23, 2022, pp. 4, 6-7 [proposing amendment to require a court to presume a qualifying mental illness contributed to the offense after the Committee on the Revision of the Penal Code found "mental health diversion has been substantially underutilized"].)  That, in my view, is a mistake.  But I nevertheless agree the trial court's diversion ruling should be affirmed because defendant conceded at oral argument that the trial court made an alternative unsuitability finding (Pen. Code, § 1001.36, subd. (c)(4)), because that finding need not be made under the higher clear and convincing evidence standard, and because sufficient evidence supports that finding.

I join the opinion for the court's rationale for rejecting defendant's argument that the trial court erred in declining to dismiss his prior serious felony conviction enhancement.


BAKER, J.